UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| GAY CATANIA, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| THE STANDARD LIFE INSURANCE COMPANY OF NEW YORK, | ) Case No. 1:17cv334 |
| | ) |
| and | ) |
| | ) |
| GATEHOUSE MEDIA, INC. WELFARE PLAN, | ) |
| | ) |
| Defendants. | ) |

## COMPLAINT

1. The Plaintiff, Gay Catania, by and through the undersigned counsel, Talia Ravis, files this Complaint against Defendants The Standard Life Insurance Company of New York (hereinafter "Standard") and Gatehouse Media, Inc. Welfare Plan (hereinafter "The Plan").

2. This action arises under the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §1001. The Court has jurisdiction over this case pursuant to 28 U.S.C. §1331, in that this action arises under the laws of the United States. Specifically, Gay Catania brings this action to enforce her rights under ERISA as authorized by 29 U.S.C. §1332(a)(1)(B).

3. The Plaintiff, Gay Catania, has at all times material hereto, been a resident of Erie, Pennsylvania.

4. Plaintiff is informed and believes that Defendant Standard is an Oregon corporation doing business in Erie, Pennsylvania. Therefore, pursuant to 29 U.S.C. §1132(e)(2), venue is proper in this judicial district.

5. Standard issued the Group Short Term Disability Insurance Policy and Group Long Term Disability Insurance Policy to GateHouse Media, LLC, Group Policy numbers 750970-B and 750970-C, for the benefits of its employees, agreeing to pay Plaintiff, as a participant of the Plan, short term and long term disability benefits in the event she became disabled and unable to work.

6. The Plan is a disability employee benefit plan that provides disability benefits to participants of the Plan in the event they become disabled on a short or long-term basis. The disability benefit pays 60% of the employee's former salary. The short-term benefits are payable for 26 weeks. The long-term benefits are payable as long as the participant remains totally and permanently disabled, through the later of the Employee's Normal Retirement Age under the 1983 amendments to the Federal Social Security Act, or through age 65, whichever is longer.

## FACTUAL ALLEGATIONS

A. **Vocational Information.**

7. Plaintiff has been an employee of Gatehouse Media, LLC since January of 2013.

8. Plaintiff worked as a Human Resources Manager for Erie Times News. According to her job description, in this position, Plaintiff's role included a number of responsibilities, including, but not limited to:

- Being responsible for the general oversite of the Human Resources Department;

- Partnering with managers and supervisors to ensure responsibilities of employees are being met;

- Overseeing the annual salaried performance review process;

- Partnering with managers to ensure appropriate action is taken regarding employees whose performance does not meet the expectations;

- Partnering with Chief Administrative officer to prepare for and successfully negotiate a labor agreement;

- Assisting managers and union officers with interpretation of the labor agreement;

- Being responsible for the oversight of the VEBA committee; and

- Ensuring benefit programs are in full compliance with federal, state and local laws and regulations;

- Providing Human Resources oversight for all subsidiary companies;

- Overseeing the ETN recruitment process;

- Providing oversight for the Editorial Review Committee;

- Ensuring all new reporter hires are funneled through the committee and all performance reviews are conducted in a timely fashion;

- Being responsible for wage and salary administration;

- Developing and overseeing the HR budget;

- Partnering with Building Superintendent to oversee the safety program;

- Representing ETN at all personnel related hearings; and

- Partnering with HR team on Wellness initiative and oversee Wellness program.

**B. The Definition of "Disability" Under the Plan.**

9. The Plan defines "Disability" as the following:

3

*"You are Disabled if you meet the following definitions during the periods they apply:*

    *A. Own Occupation Definition Of Disability.*

    *B. Any Occupation Definition Of Disability.*

*A. Own Occupation Definition Of Disability*

*During the Benefit Waiting Period and the Own Occupation Period you are required to be Disabled only from your Own Occupation.*

*You are Disabled from your Own Occupation if, as a result of Physical Disease, Injury, Pregnancy or Mental Disorder:*

*1. You are unable to perform with reasonable continuity the Material Duties of your Own Occupation; and*

*2. You suffer a loss of at least 20% in your Indexed Predisability Earnings when working in your Own Occupation.*

*Note: You are not Disabled merely because your right to perform your Own Occupation is restricted, including a restriction or loss of license.*

*During the Own Occupation Period you may work in another occupation while you meet the Own Occupation Definition of Disability. However, you will no longer be Disabled when your Work Earnings from another occupation met or exceed 80% of your Indexed Predisability Earnings. Your Work Earnings may be Deductible Income. See Return To Work Provisions and Deductible Income.*

*Own Occupation means any employment, business, trade, profession, calling or vocation that involves Material Duties of the same general character as the occupation you are regularly performing for your Employer when Disability begins. In determining your Own Occupation, we are not limited to looking at the way you perform your job for your Employer, but we may also*

4

*look at the way the occupation is generally performed in the national economy. If your Own Occupation involves the rendering of professional services and you are required to have a professional or occupational license in order to work, your Own Occupation is as broad as the scope of your license.*

*Material Duties means the essential tasks, functions and operations, and the skills, abilities, knowledge, training and experience, generally required by employers from those engaged in a particular occupation that cannot be reasonably modified or omitted. In no event will we consider working an average of more than 40 hours per week to be a Material Duty.*

*B. Any Occupation Definition of Disability*

*During the Any Occupation Period you are required to be Disabled from all occupations.*

*You are Disabled from all occupations if, as a result of Physical Disease, Injury, Pregnancy or Mental Disorder, you are unable to perform with reasonable continuity the Material Duties of Any Occupation.*

*Any Occupation means any occupation or employment which you are able to perform, whether due to education, training, or experience, which is available at one or more locations in the national economy and in which you can be expected to earn at least 60% of your Indexed Predisability Earnings within twelve months following your return to work, regardless of whether you are working in that or any other occupation.*

*Material Duties means the essential tasks, functions and operations, and the skills, abilities, knowledge, training and experience, generally required by employers from those engaged in a particular occupation that cannot be reasonably modified or omitted. In no event will we consider working an average of more than 40 hours per week to be a Material Duty."*

**[Group Long Term Disability Insurance Policy, pages 8-9]**

5

C. **Medical Information Supporting Plaintiff's Disability.**

10. Plaintiff underwent surgery for trigeminal neuralgia in June of 2015. After surgery, Plaintiff immediately started showing symptoms of occipital neuralgia. Due to this and her idiopathic poly progressive neuropathy, Plaintiff was forced to stop working in January of 2016.

11. As a result of this condition, Plaintiff suffers from many disabling symptoms, including but not limited to: headaches, which can cause vomiting; nausea, dizziness, memory loss, muscle spasms, right ear and eye pain; severe head pain, neck pain, leg pain, and back pain.

12. Plaintiff, together with her physicians, has attempted to treat her disabling conditions with medication, steroid injections for pain, and nerve blocking, but nothing has provided enough relief to allow her to return to work.

13. Plaintiff's physicians have consistently held that she has remained totally disabled from performing the material duties of her own occupation, or any other, since she was forced to stop working in January of 2016, and that she remains totally and permanently disabled from working in her own or any occupation to date.

D. **Claim Information Under the Plan**

   The STD Claim.

14. In January of 2016, Plaintiff was no longer able to work due to the severity of her conditions.

15. Plaintiff applied for short-term disability ("STD") and long-term disability ("LTD") benefits under the Plan in January of 2016.

16. STD benefits under the Plan are payable for up to 26 weeks.

6

17. Plaintiff was approved and received STD benefits for only 22 weeks, from February 4, 2016 through July 12, 2016.

18. Plaintiff was never notified that her STD benefits were terminated.

19. Plaintiff was never provided the opportunity to appeal her STD denial.

The LTD Claim.

20. Plaintiff's LTD claim was denied in a letter from Standard dated September 23, 2016.

21. In its LTD denial letter, Standard explained that in order to be eligible for benefits, Plaintiff must be continuously disabled during the benefit waiting period, from January 28, 2016 through July 25, 2016.

22. With the help of former counsel, Plaintiff submitted a letter dated March 1, 2017, appealing Standard's LTD denial and in support of her claim for disability benefits.

23. As part of Plaintiff's appeal, Plaintiff submitted to Standard evidence supporting the fact that she has been totally disabled from performing the material duties of her own occupation or any other, and that her condition has not significantly improved in any way, including:

- Plaintiff's updated medical records; and
- Letter of support from Plaintiff's former supervisor at Times Publishing Company

24. Despite this information, Defendants upheld the denial of LTD benefits in a letter dated June 6, 2017, rendering this claim ripe for suit.

25. The medical information in Standard's file establishes that Plaintiff was entitled to receive disability benefits under The Plan for the entire duration of the benefit period.

26. Plaintiff's physicians reported to Standard that she continues to be totally disabled from working in her own or any occupation.

7

27. Plaintiff provided significant medical proof of her disability to Standard; despite this proof, Defendants refused to pay Plaintiff her disability benefits.

28. In determining Plaintiff's disability benefits, Standard acted as a fiduciary in the administration of Plaintiff's claim.

29. Standard, acting under a conflict of interest, breached its fiduciary duties set forth in ERISA§ 404, 29 U.S.C. § 1104, in failing to act for the exclusive benefit of Plaintiff, and in failing to act in accordance with the terms of The Plan.

30. Plaintiff has exhausted all administrative remedies.

## CLAIMS FOR RELIEF

31. Paragraphs 1-28 are hereby re-alleged, and are incorporated herein by reference.

32. From January of 2016, until the present, Plaintiff has remained unable to perform the material duties of her own occupation, or any other.

33. Plaintiff has provided the Defendants with substantial medical evidence verifying her total disability and eligibility disability benefits under The Plan.

34. Her physicians have reported that Plaintiff is unable to work due to the seriousness of her conditions.

35. The Defendants have wrongfully denied Plaintiff's disability benefits in violation of The Plan and ERISA.

36. Defendants have breached The Plan and violated ERISA by failing to pay disability benefit payments to Plaintiff at a time when The Plan knew, or should have known, that Plaintiff was entitled to those benefits under the terms of The Plan.

37. Plaintiff is informed and believes and thereon alleges that Defendants wrongfully denied her disability benefits under The Plan by other acts or omissions of which Plaintiff is

8

presently unaware, but which may be discovered in this future litigation and which Plaintiff will immediately make Defendants aware of once said acts or omissions are discovered by Plaintiff.

38. Following the denial of benefits under The Plan, Plaintiff exhausted all administrative remedies required under ERISA, and/or as demonstrated by Defendants' actions herein, attempts to pursue further administrative remedies would have been futile. Plaintiff has performed all duties and obligations on Plaintiff's part to be performed under The Plan.

39. As a proximate result of the aforementioned wrongful conduct of The Plan, Plaintiff has damages for loss of disability benefits in a total sum to be shown at the time of trial.

40. The wrongful conduct of Standard and The Plan has created uncertainty where none should exist; therefore, Plaintiff is entitled to enforce her rights under the terms of The Plan.

41. Defendant Standard abused its discretion by wrongfully denying Plaintiff's disability benefits.

42. By denying Plaintiff's claim despite a plethora of evidence supporting her eligibility for benefits under The Plan, Defendants denied Plaintiff's claim in bad faith.

WHEREFORE, the Plaintiff, Gay Catania, requests that this Honorable Court enter Judgment:

A. Finding that Gay Catania is entitled to disability benefits and order the Defendants to pay all past due benefits and pay for further monthly benefits as they become due.

B. Award the Plaintiff interest on the amount of past due benefits, which remain unpaid.

C. Award the Plaintiff her attorney's fees and costs.

D. Awarding all other relief as may be just and appropriate.

Dated: December 18, 2017

/s/Talia Ravis
Talia Ravis
MO Bar #58366
Law Office of Talia Ravis, P.A.
9229 Ward Parkway, Suite 370
Kansas City, MO 64114
816-333-8955 (tel)
1-800-694-3016 (fax)
travis@erisakc.com
*ATTORNEY FOR PLAINTIFF*